IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JAMES ARTHUR SMITH, JR.,**

    **Plaintiff,**

v.                                    **Case No. 3:17-cv-03502**

**CORPORAL DAVIS, FNU, Western
Regional Jail; and
CORPORAL DIAMOND, FNU,
Western Regional Jail,**

    **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's *pro se* amended complaint filed pursuant to 42 U.S.C. § 1983 and Defendants' motions to dismiss. (ECF Nos. 9, 20, 30). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Plaintiff's allegations, the undersigned **FINDS** that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution (the "Eleventh Amendment") and Defendants are entitled to qualified immunity with respect to Plaintiff's claims against them in their personal capacities. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to

1

dismiss, (ECF Nos. 20, 30), and **DISMISS** Plaintiff's amended complaint with prejudice, (ECF No. 9).

## I. Relevant Facts

Plaintiff's amended complaint alleges that Defendants, correctional officers Diamond and Davis ("Diamond" and "Davis"), whose first names are unknown to Plaintiff, refused to give Plaintiff hot meals during Ramadan[1] on June 24, June 26, and June 27, 2017 while Plaintiff was incarcerated in the Western Regional Jail ("WRJ") in this judicial district. (ECF No. 9 at 4). Plaintiff alleges that Defendants claimed to "not know anything about Muslims or Ramadan" and Davis stated that he could give Plaintiff two bagged lunches and Plaintiff "better be happy with that." (*Id.* at 4-5). Plaintiff seeks an unspecified amount of "monetary relief for the pain and suffering of not getting a hot meal," which Plaintiff states affected how he "practice[d] fasting for the religious holiday." (*Id.* at 5).

Diamond and Davis separately filed motions to dismiss and supporting memoranda, which are substantively identical. Defendants argue that insofar as Plaintiff seeks retrospective monetary relief from them as state officials, his claims are barred by the Eleventh Amendment and Defendants are not "persons" for the purpose of § 1983 because a suit for monetary damages against a state official is no different than a damages suit against the State. (ECF Nos. 21 and 31 at 3-4). Further, Diamond and Davis contend that they are entitled to qualified immunity because Plaintiff does not allege any facts establishing that the meals that they served Plaintiff "would result in an alleged deprivation of a perceived religious right." (*Id.* at 6, 7).

---

[1] Ramadan is a holy month in the Islamic religion in which followers fast during the day (from pre-dawn until dusk). https://ing.org/ramadan-information-sheet/

The undersigned advised Plaintiff of his right to respond to the motions to dismiss. (ECF Nos. 22, 32). However, the orders sent to him at the WRJ were returned undeliverable, as Plaintiff had been released to serve a term of state parole. (ECF Nos. 23, 33). Therefore, Plaintiff was ordered to update his address with the Clerk of Court by October 31, 2017. (ECF No. 25). Thereafter, the West Virginia Division of Corrections Parole Services provided a letter to the Court stating that Plaintiff absconded from parole on October 27, 2017 and a warrant was issued for his arrest, but his whereabouts were unknown. (ECF No. 26). Plaintiff has not provided his current address to the Clerk of Court or responded to the motions to dismiss despite having been advised that his failure to do so could result in dismissal of his amended complaint.

## II. **Standard of Review**

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) and (12)(b)(6). A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). Second, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords

3

the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that a court has subject matter jurisdiction rests with the plaintiff, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires allegations that "raise a right to relief above the speculative level." *Id.* at 555. Consequently, the complaint must include "facts sufficient to state all the elements of [the plaintiff's] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

"The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Va. Dep't of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw*, 201 F.3d 521, 525, n.2 (4th Cir. 2000)); *Darling v. Falls*, 236 F. Supp. 3d 914, 925 n.11 (M.D.N.C. 2017). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; see also Zemedagegehu v. Arthur*, No. 1:15cv57 (JCC/MSN), 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) (collecting cases). In this case, whether Defendants' Eleventh Amendment immunity should be evaluated under Rule 12(b)(1) or 12(b)(6) has no

4

practical difference given that the undersigned relied solely on the amended complaint in resolving the motion to dismiss and construed it in the light most favorable to Plaintiff. *Beckham v. Nat'l. R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 547 (D. Md. 2008).

Plaintiff filed his amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass,* 324 F.3d at 765. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Discussion</u>

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v.*

*Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Id.* at 50.

### A. Eleventh Amendment Immunity

Defendants contend that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution. (ECF Nos. 20, 21, 30, 31). In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979, 42 U.S.C. § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Court further held that a State's officials "acting in their official capacities" were not "persons" under § 1983, explaining: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (citations omitted).

The Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities

6

under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not allege capacity explicitly, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether

7

a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed.App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Here, Plaintiff does not specify whether he sues Defendants in their official or personal capacities. (ECF No. 9). Consequently, the undersigned must review the amended complaint and make a fair determination. Plaintiff does not allege that Defendants acted in accordance with official policy in denying him hot meals for Ramadan; rather, he appears to argue that Defendants deviated from the "Ramadan Religious Holiday Meal Regulations" because they "claim[ed] to not know anything about Muslims or Ramadan." (*Id.* at 4). Also, the only relief which Plaintiff seeks is monetary damages, which is unavailable in an official capacity suit. These factors indicate that Plaintiff sued Defendants in their personal capacities. Nevertheless, to the extent that Plaintiff seeks money damages from Defendants for acts done in their official capacities, the undersigned **FINDS** that Defendants are not "persons" liable for money damages under § 1983; instead, they are arms of the State of West Virginia

entitled to Eleventh Amendment immunity. Therefore, the undersigned respectfully **RECOMMENDS** that Plaintiff's monetary claims against Defendants in their official capacities be dismissed.

### B. Qualified Immunity

The undersigned next examines Plaintiff's claims against Defendants in their personal capacities. Defendants argue that they are entitled to qualified immunity in this action because Plaintiff failed to articulate any facts demonstrating that they engaged in conduct, which violated Plaintiff's clearly established rights. (ECF Nos. 21 and 31 at 6). Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

9

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. As such, if a court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

"[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (citing *Tobey v. Jones,* 706 F.3d 379, 393–94 (4th Cir. 2013). "So long as qualified immunity does not turn on *disputed facts,* 'whether the officer's actions

10

were reasonable is a question of pure law.'" *Id.* (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (*en banc* )). However, in many cases, "immunity is peculiarly well-suited for resolution at the summary judgment stage." *Id.* (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)). In this case, Plaintiff has not filed any response to Defendants' claim of qualified immunity.

Plaintiff's amended complaint asserts that Defendants refused to give Plaintiff hot meals during Ramadan on June 24, 26, and 27. Plaintiff contends that Defendants "claimed to not know anything about Muslims or Ramadan" and offered him "cold bag lunches" instead of hot meals. (ECF No. 9 at 4-5). Plaintiff asserts "pain and suffering [from] not getting a hot meal," which he stated affected how he fasted for the religious holiday. However, Plaintiff did not allege that he suffered any physical injury, much less a serious physical injury, as a result of Defendants' alleged actions. Claims regarding inadequate or improper food in prison or jail are often analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment.[2] In order to state an Eighth Amendment claim, a plaintiff must show: (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Wilson,* 501 at 298-300)*.*

The objective component of an Eighth Amendment claim is satisfied by a

---

[2] If the prisoner is a pretrial detainee, the conditions of confinement claim is analyzed under the due process clause of the Fourteenth Amendment, but as a practical matter, the analysis is "materially indistinguishable." *Stockton v. Wake Cty.,* 173 F. Supp. 3d 292, 309 (E.D.N.C. 2016). Defendants' briefs provide the legal standard for pretrial detainees, which appears to be mistakenly included. (ECF Nos. 21 and 31 at 5). Regardless of whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the actions and incidents at issue in his amended complaint, the undersigned's analysis is the same.

11

showing that the challenged conditions caused or constituted an extreme deprivation of a basic human need. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [plaintiffs] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [their] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (*quoting De'Lonta*, 330 F.3d at 634); *see also Stickler,* 989 F.2d at 1380 ("[F]or prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition."). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler,* 989 F.2d 1375, 1379–80 (4th Cir. 1993)).

To fulfill the subjective component, Plaintiff must demonstrate that Defendants were deliberately indifferent to his health or safety. *Farmer*, 511 U.S. at 834 *quoting Wilson,* 501 U.S. at 297). The Supreme Court of the United States has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Estelle v. Gamble,* 429 U.S. 97. In other words, if the defendants were

aware of an excessive risk of harm to Plaintiff's health or safety and disregarded it, they had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 303; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010).

Here, Plaintiff does not allege that he suffered any physical injury, much less a serious physical injury, from the lack of hot meals during Ramadan, nor does he state facts sufficient to allege that Defendants knowingly disregarded an excessive risk of harm to his health or safety. Therefore, Plaintiff fails to state a claim under the Eighth Amendment. *Wassil v. Casto*, No. CIV.A. 3:13-06020, 2014 WL 988479, at *4 (S.D.W. Va. Mar. 12, 2014) ("Although the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the provision of inadequate food to state an Eighth Amendment violation.") (citation omitted); *Couch v. Jabe*, 479 F. Supp. 2d 569, 588 (W.D. Va. 2006) (serving cold food to inmate during Ramadan was not a constitutional violation); *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1267–68 (W.D. Wash. 2013), *aff'd,* 639 F. App'x 484 (9th Cir. 2016) (dismissing Eighth Amendment claim due to lack of medically competent evidence indicating that the food provided to the plaintiff during Ramadan was inadequate to maintain his health); *Beshere v. Peralta*, No. SA-15-CA-1119-RP, 2016 WL 3129312, at *10 (W.D. Tex. June 2, 2016) (holding that the plaintiff's "complaints about receiving sack lunches the vast majority of the time he has been incarcerated at the Connally Unit are insufficient, *absent any allegation he has suffered any actual physical harm*, to overcome the defense of qualified immunity or furnish a basis for an award of monetary damages under § 1983.") (emphasis in original).

Moreover, even construing the alleged facts in the light most favorable to

Plaintiff, Plaintiff fails to show that Defendants' actions in denying him hot meals on three days during Ramadan substantially burdened the practice of his religion. "[U]nder the First Amendment, an inmate has a clearly established right to a diet consistent with his religious scruples, including proper food during Ramadan." *Etterson v. Newcome*, No. 3:14CV650, 2016 WL 3912034, at *4 (E.D. Va. July 19, 2016) (quoting *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir.2006)) (citations and markings omitted). "Prison officials violate this clearly established right if they intentionally and without sufficient justification deny an inmate a religiously mandated diet." *Id.* To state a claim under the Free Exercise Clause of the First Amendment, Plaintiff must allege facts that (1) he holds a sincere belief that is religious in nature and (2) that Defendants imposed a substantial burden on the practice of his religion. *Etterson v. Newcome*, No. 3:14CV650, 2016 WL 3912034, at *4 (E.D. Va. July 19, 2016). "A 'substantial burden' is one that puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Bassett*, No. 7:07CV00506, 2009 WL 3157367, at *6 (W.D. Va. Sept. 29, 2009) (quoting *Thomas v. Review Bd. of Ind. Employment Sec. Div.,* 450 U.S. 707, 718 (1981)).

Plaintiff does not allege any facts that "being served hot meals is a requirement under Islamic tenets during the Ramadan fasting period, nor does [he] claim that such is central to his own subjective religious beliefs." *Couch v. Jabe*, 479 F. Supp. 2d 569, 585 (W.D. Va. 2006). Furthermore, while Plaintiff states that the denial of hot meals affected how he "practice[d] fasting," he does not assert that he was pressured to violate the fasting rules of Ramadan. As noted, Plaintiff asserts that he was offered cold bagged lunches in lieu of hot meals; however, he does not adduce any facts that he was required to choose between his religious beliefs and his health. *Id.* at 586 (finding that the

plaintiff's free exercise of religion was not substantially burdened by the defendants' service of exclusively cold food during part of Ramadan); *Cf. Etterson v. Newcome*, No. 3:14CV650, 2016 WL 3912034, at *5 (E.D. Va. July 19, 2016) (finding that correctional officer defendants were not entitled to qualified immunity when the plaintiff alleged that they "intentionally and without sufficient justification" had him removed from his religious diet because they perceived that they observed him breaking the Ramadan fasting rules).

For the reasons stated above, the undersigned **FINDS** that Plaintiff fails to allege facts showing that Defendants violated a constitutional or statutory right of Plaintiff. As such, Defendants are entitled to qualified immunity from suit in this action.

### IV. Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and respectfully **RECOMMENDS** that Defendants' motions to dismiss, (ECF Nos. 20, 30), be **GRANTED**, and Plaintiff's amended complaint be **DISMISSED, with prejudice**, (ECF No. 9).

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the

portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented parties.

**FILED:** April 10, 2018

_____
Cheryl A. Eifert
United States Magistrate Judge